**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD WILSON, | ) | |
| Plaintiff, | ) | No. 4:24-CV-01704 JSD |
| v. | ) | |
| CITY OF UNIVERSITY CITY, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants University City Chief of Police Larry Hampton ("Chief Hampton")[1], University City Police Detective Jesse Novotney ("Detective Novotney"), and University City Police Officer Octavia Hearon's ("Officer Hearon") (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 76.) On June 11, 2026, Plaintiff Richard Wilson ("Plaintiff") filed a Memorandum in Opposition to Defendants Chief Hampton, Detective Novotney, and Octavia Hearon's Motion for Summary Judgment. (ECF No. 85.) The Court has thoroughly considered all the parties' submissions, including Plaintiff's responsive filings and sur-response, along with Chief Hampton, Detective Novotney, and Octavia Hearon's motion and reply. This matter is fully briefed and ready for disposition. For the reasons stated here, the Court grants Defendants Chief Hampton, Detective Novotney, and Octavia Hearon's Motion for Summary Judgment.

---

[1] Chief Hampton has been the Chief of Police for the University City Police Department since August 2016. (ECF No. 78-8, ¶ 2.)

## BACKGROUND

On November 1, 2022, Officer Hearon was dispatched to the Goodwill store, located within University City, for a complaint of trespassing and flourishing of a firearm following an incident where Plaintiff entered the employee-only back area of the store to serve a restraining order on employee Todd Woods. (Defendants' Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment) (ECF No. 78, ¶¶ 1, 3, 10.)[2] While at the store, Officer Hearon reviewed its surveillance footage with the store's manager, Robin Bowman. (ECF No. 78, ¶ 11.) Also, that same day, Plaintiff submitted his own complaint to the University City Police Department, alleging Woods had assaulted him. (ECF No. 78, ¶ 13.) Plaintiff's complaint was subsequently forwarded to Detective Jesse Novotney ("Detective Novotney"), who thereafter reviewed Goodwill's surveillance footage of the November 1, 2022 incident. (ECF No. 78, ¶ 14.) On November 3, 2022, Detective Novotney began leading the investigation into complaints stemming from the November 1 incident. (ECF No. 78, ¶ 15.)

On November 8, 2022, Detective Novotney went to Plaintiff's listed office address to discuss the November 1 incident as well as his complaint. (ECF No. 78, ¶ 16.) Plaintiff spoke to Detective Novotney through a closed door until Detective Novotney had to leave for an urgent call. (ECF No. 78, ¶ 17.) Later that day, Detective Novotney spoke with Plaintiff by phone and asked

---

[2] Although Plaintiff identifies several factual disputes—including whether the area Plaintiff entered was "employees only," his identified "disputes" regarding the initial dispatch classification, on-scene remarks by personnel, and internal deliberations regarding the viability of the trespass charge are not material to the disposition of this motion. *See* ECF No. 86. A fact is material only if its resolution could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As discussed below, because the issuance of a citation does not constitute a Fourth Amendment seizure as a matter of law and because Detective Novotney possessed at least arguable probable cause based on the property owner's signed complaint and surveillance recordings, the internal deliberations among department personnel do not create a triable issue of material fact precluding summary judgment.

him to go to the police station to provide his video recordings, review the surveillance footage, and discuss the incident and complaints. (ECF No. 78, ¶ 18.) Plaintiff denied Detective Novotney's requests, but later that day provided, via email, video recordings from his phone/body-worn camera showing the November 1 incident. (ECF No. 78, ¶¶ 19, 20.)

On November 14, 2022, Detective Novotney went to Goodwill and spoke with the manager, Robin Bowman, who stated Goodwill wished to prosecute Plaintiff for trespassing and who signed a complaint against him. (ECF No. 78, ¶ 21.) Detective Novotney forwarded the signed complaint, along with copies of all evidence and video footage, to the University City Prosecutor for review. (ECF No. 78, ¶ 22.) After forwarding these materials, Detective Novotney had no further involvement in the matter. (ECF No. 78, ¶ 23.)

On December 28, 2022, University City Prosecutor Shujat Qalbani signed a Complaint and Information, issuing Citation Number 0087263 to Plaintiff for trespassing in violation of University City Ordinance number 215.1060 (the "Citation"). (ECF No. 78, ¶ 24.) Notably, Chief Hampton has attested that he did not order or direct any officer or prosecutor pertaining to the issuance of the Citation. (ECF No. 78, ¶ 25.) More to it, Plaintiff was never under custodial arrest in connection with the Citation or the November 1 incident, and the trespass charges against Plaintiff were eventually dismissed *nolle prosequi*. (ECF No. 78, ¶¶ 26, 27.)

The remaining claims comprise: Count II (§ 1983 Fourth and Fourteenth Amendment violations) and Count III (civil rights conspiracy under the Fourth and Fourteenth Amendments) against Chief Hampton, Detective Novotney, and Officer Hearon; and Counts IV (Fourth

Amendment false arrest), VI (First Amendment retaliation), VII (§ 1983 abuse of process), and VIII (§ 1983 malicious prosecution) against Detective Novotney and Officer Hearon.[3]

## STANDARD OF REVIEW

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson*, 477 U.S. at 248. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine

[3] The Court previously dismissed claims against Mers/Goodwill Industries, Robin Bowman, and the City of University City, University City Police Department, Jeffrey Hales, Steven McMahon, John Tieman, Dennis Fuller, Bwayne Smotherson, Stacy Clay, and Terry Crow. *See* ECF No. 56.

whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

### A. QUALIFIED IMMUNITY STANDARD

Defendants argue that they are entitled to summary judgment under the doctrine of qualified immunity on all counts. (ECF No. 77 at 6.) To determine whether the defendants are entitled to qualified immunity, the Court asks two questions: "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (quoting *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court may consider these two steps in any order, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), but "[u]nless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

### B. COUNT II: § 1983 VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AGAINST CHIEF HAMPTON.

In Count II, Plaintiff alleges violations of the Fourth and Fourteenth Amendments against Chief Hampton for his alleged involvement in Plaintiff's purported false arrest and malicious prosecution. (ECF No. 1 at 12.) Plaintiff's allegations include that Chief Hampton was aware that

a subordinate violated Plaintiff's constitutional rights, ordered Plaintiff's arrest, and directed Detective Novotney and Officer Hearon to falsely arrest and prosecute Plaintiff. (*Id.*)

As a threshold matter, Plaintiff's claims are governed by the Fourth Amendment and not the Fourteenth Amendment's substantive due process guarantees. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because Plaintiff's claims challenge pretrial liberty deprivations and wrongful prosecution, the Fourth Amendment's prohibition against unreasonable seizures supplies the applicable constitutional framework. *See id.* at 274–75. Therefore, as a matter of law, Plaintiff cannot maintain an independent Fourteenth Amendment substantive due process claim arising from these events.

To establish a Fourth Amendment violation, Plaintiff must show an unreasonable seizure occurred. U.S. CONST. amend. IV; *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). A seizure occurs only when a person's freedom of movement is restrained by means of physical force or show of authority. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980) (*citing Terry v. Ohio,* 392 U.S. 1, 19, n. 16 (1968)). Moreover, issuing a criminal citation does not constitute a Fourth Amendment seizure. *Wendt v. Iowa*, 971 F.3d 816, 819 (8th Cir. 2020) (*citing Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 651 (8th Cir. 2001) (noting that the Eighth Circuit "has never held that pretrial restrictions such as [being forced to post bond, appear in court, or made to answer charges] constitute a Fourth Amendment seizure")). Here, Plaintiff fails to establish that a seizure occurred. Indeed, the facts show Plaintiff was never placed under custodial arrest or physically detained but was merely issued a citation. (*See* ECF No. 78 ¶¶ 24, 26.)

Plaintiff contends that, like the plaintiff in *Brown v. City of Dermott*, 151 F.4th 985, 990 (8th Cir. 2025), he was charged by a criminal citation compelling him to submit to prosecution and appear in court, subject to arrest if he failed to do so. (*See* ECF No. 86 ¶ 26.) However, Plaintiff's reliance on *Brown* is misplaced. In *Brown*, the Eighth Circuit affirmed summary judgment, finding "[n]o court has held that a summons alone constitutes a seizure." 151 F.4th at 988, 990. Here, because Plaintiff was never subjected to an arrest or post-citation physical restraint, he cannot establish a Fourth Amendment seizure necessary to sustain an unlawful arrest or malicious prosecution claim. *Mendenhall*, 446 U.S. at 553; *see McCoy*, 342 F.3d at 846; *see also Delgado v. Hajicek*, No. CIV 07-2186 RHK/RLE, 2008 WL 2042606, at *5 (D. Minn. May 12, 2008) ("Delgado simply cannot state a Fourth–Amendment claim based upon Hajicek issuing the theft citation, even if he lacked probable cause to do so, because the citation was not a "seizure" within the purview of the Fourth Amendment.").

Considering that Plaintiff cannot establish a constitutional violation under either the Fourth or Fourteenth Amendments, Chief Hampton is entitled to qualified immunity. *See Jones*, 675 F.3d at 1161; *see also Krout*, 583 F.3d at 564. Accordingly, the Court grants summary judgment to Chief Hampton on Count II.

### C. COUNT III: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AGAINST CHIEF HAMPTON, DETECTIVE NOVOTNEY, AND OFFICER HEARON.

Plaintiff alleges a conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 against Chief Hampton, Detective Novotney, and Officer Hearon. (ECF No. 1 at 14-15.) To establish conspiracy under § 1985(3), a plaintiff must establish the defendants did:

> (1) "conspire ... (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." . . . [and] that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy,"

> whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989) (*quoting Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971) (*quoting* 42 U.S.C. § 1985(3))). Plaintiff must point to at least some facts suggesting Chief Hampton, Detective Novotney, and Officer Hearon reached an understanding to violate his rights. *Id.* Additionally, claims under § 1985(3) require proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102.

Here, Plaintiff alleges conspiracy due to extensive, coordinated communications between Chief Hampton, Detective Novotney, Officer Hearon, and others at the University City Police Department concerning Plaintiff and Goodwill, the disregard of Plaintiff's complaint against Woods, and the joint decision to move forward with only the criminal trespass allegations against Plaintiff. (ECF No. 85 at 9; ECF No. 86 (Statement of Additional Facts ¶¶ 19–21).) Plaintiff acknowledges that, under the intracorporate conspiracy doctrine, a single governmental entity cannot conspire with itself through its agents acting within the scope of their employment: "Plaintiff is candid with the Court that the intracorporate-conspiracy doctrine is a substantial obstacle to Count III." (ECF No. 85 at 10.); *see Kelly v. City of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016). Nevertheless, Plaintiff argues that an exception to the intracorporate conspiracy doctrine under *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987) controls because the Chief Hampton, Detective Novotney, and Officer Hearon allegedly pursued Plaintiff out of retaliatory, personal motives beyond the scope of their employment. (ECF No. 85 at 10.) *See Garza*, 814 F.2d at 556 ("While it is true that a corporation cannot conspire with itself, an intracorporate conspiracy may be established where individual defendants are also named and those defendants act outside the scope of their employment for personal reasons."); *L.L. Nelson Enters., Inc. v. Cnty.*

*of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012) ("Under this intracorporate conspiracy doctrine, a local government entity cannot conspire with itself through its agents acting within the scope of their employment.").

**a) Chief Hampton.**

Plaintiff's evidence fails to support the *Garza* exception. In an attempt to support his claim, Plaintiff notes that Chief Hampton forwarded or participated in internal command communications seeking input on an email from Attorney Jimerson, received updates from Detective Novotney, and identified individuals who communicated with him regarding the November 1, 2022 incident. (ECF No. 86 ¶ 25 (Plaintiff's Response).) While Plaintiff mentions coordinated communications involving Chief Hampton and disputes Chief Hampton's knowledge, involvement, ratification, and failure to intervene, Plaintiff provides no evidence demonstrating that Chief Hampton acted outside the scope of his employment or out of personal animus. (*See* ECF No. 86 ¶ 25.) As such, the *Garza* exception does not apply, and the intracorporate conspiracy doctrine bars Count III against Chief Hampton.

Moreover, the Court holds that Plaintiff fails to state a conspiracy claim against Chief Hampton because Plaintiff cannot demonstrate an unlawful conspiracy agreement. *See City of Omaha Emps. Betterment Ass'n*, 883 F.2d at 652-53 (holding that the plaintiff could not support a finding that the Union entered into a conspiracy with the City to deny Linstrom a promotion: "We agree with the Union that none of this even remotely establishes that the Union harbored any animus toward women or conspired to deny Linstrom a promotion."). Rather, the discussions identified in the briefing are routine, customary discourse that would be expected for the operation of a police department. Nothing indicates that Chief Hampton or any of the other purported

participants in this conspiracy harbored any animus towards Plaintiff. As a result, the Court holds this claim fails as a matter of law.

Finally, Chief Hampton is entitled to qualified immunity because Plaintiff has not demonstrated the deprivation of a constitutional or statutory right. *See Jones*, 675 F.3d at 1161; *see also Krout*, 583 F.3d at 564. As shown above, Plaintiff has not shown a conspiracy to violate his civil rights and, therefore, Chief Hampton is entitled to qualified immunity on this claim. Accordingly, the court grants summary judgment to Chief Hampton on Count III.

**b) Detective Novotney and Officer Hearon.**

Also in Count III, Plaintiff alleges conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 against Detective Novotney and Officer Hearon. (ECF No. 1 at 14.) As previously discussed, Plaintiff alleges conspiracy based upon (1) extensive, coordinated communications between Chief Hampton, Detective Novotney, Officer Hearon, and others at the University City Police Department concerning Plaintiff and Goodwill, (2) the disregard of Plaintiff's complaint against Woods, and (3) the joint decision to only move forward with the trespass allegations against Plaintiff. (ECF No. 85 at 9.) As he did with respect to Chief Hampton, Plaintiff again acknowledges the intracorporate conspiracy doctrine, but argues that *Garza*, 814 F.2d at 556, controls because Defendants Novotney and Hearon allegedly pursued Plaintiff out of retaliatory, personal motives beyond the scope of their employment. (ECF No. 85 at 10.)

Plaintiff's evidence again fails to support the *Garza* exception for Defendants Novotney and Hearon. In support of his claim, Plaintiff identifies communications between the officers and records concerning the November 1, 2022 incident. (ECF No. 85 at 9; ECF No. 86 (Statement of Additional Facts ¶¶ 19–21).) However, Plaintiff's purported "additional facts" reflect only that Detective Novotney communicated with other officers about reports and footage related to the

incident. (ECF No. 86 (Statement of Additional Facts ¶¶ 19–21).) While Plaintiff disputes whether Officer Hearon's conduct contributed to the prosecution, Plaintiff provides no evidence demonstrating that her actions fell outside the scope of her official duties. (*See* ECF No. 86 ¶ 15.) Similarly, while Plaintiff takes issue with Detective Novotney's investigation, omissions, report, evidence selection, and communications with the prosecutor, these investigative tasks are core functions of his employment. (*See* ECF No. 86 ¶ 23.) Plaintiff presents no evidence that Detective Novotney or Officer Hearon acted for personal reasons outside of their official duties, nor has Plaintiff produced evidence of discriminatory animus. *See City of Omaha Emps. Betterment Ass'n*, 883 F.2d at 652-53. As a result, the Court holds that Count III is barred under the intracorporate conspiracy doctrine and because there is no evidence that Detective Novotney and Officer Hearon conspired to violate Plaintiff's civil rights in violation of the Fourth and Fourteenth Amendments.

Without proof of a constitutional violation, Detective Novotney and Officer Hearon are entitled to qualified immunity, and Count III is barred. *See Jones*, 675 F.3d at 1161; *see also Krout*, 583 F.3d at 564. Accordingly, summary judgment is granted to Detective Novotney and Officer Hearon on Count III.

**D. COUNT IV: FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT AGAINST DETECTIVE NOVOTNEY AND OFFICER HEARON.**

In Count IV, Plaintiff alleges false arrest in violation of his Fourth Amendment rights against Detective Novotney and Officer Hearon. (ECF No. 1 at 16.) To establish a false arrest in violation of Fourth Amendment rights, a plaintiff must show he was detained in the absence of probable cause. *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 366–367 (2017); *see also Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) ("In connection to a Fourth Amendment false arrest claim, the relevant inquiry is whether the officers had probable cause to arrest Larry Smithson."). Here, the facts show Plaintiff was never placed under custodial arrest or physically detained but

was merely issued a citation. (*See* ECF No. 78 ¶¶ 24, 26.) As discussed above regarding Count II, Plaintiff fails to establish that a Fourth Amendment seizure occurred because issuance of a criminal citation does not constitute a Fourth Amendment seizure as a matter of law. *Wendt*, 971 F.3d at 819 (*citing Tech. Ordnance, Inc.*, 244 F.3d at 651 (noting that the Eighth Circuit "has never held that pretrial restrictions such as [being forced to post bond, appear in court, or made to answer charges] constitute a Fourth Amendment seizure")).

Plaintiff contends that, like the plaintiff in *Brown*, 151 F.4th at 990, he was charged by a criminal citation, compelled to submit to prosecution and appear in court, subject to arrest if he failed to do so. (*See* ECF No. 86 ¶ 26.) As stated before, Plaintiff's reliance on *Brown* is misplaced. In *Brown*, the Eighth Circuit affirmed summary judgment, finding "[n]o court has held that a summons alone constitutes a seizure." 151 F.4th at 988, 990. Because Plaintiff was never subjected to an arrest or post-citation physical restraint, he cannot establish the Fourth Amendment seizure necessary to sustain an unlawful arrest claim. *See Manuel*, 580 U.S. at 366–367.

As Plaintiff cannot establish a constitutional violation under the Fourth Amendment, Detective Novotney and Officer Hearon are entitled to qualified immunity. *See Jones*, 675 F.3d at 1161; *see also Krout*, 583 F.3d at 564. Therefore, summary judgment is granted on Count IV.

**E. COUNT VI: RETALIATION IN VIOLATION OF THE FIRST AMENDMENT AGAINST DETECTIVE NOVOTNEY AND OFFICER HEARON.**

Plaintiff alleges a First Amendment retaliation claim under 42 U.S.C. § 1983 against Detective Novotney and Officer Hearon, asserting they cited Plaintiff and pursued trespass charges against him in retaliation for filing a complaint against Woods. (ECF No. 1 at 20.) Detective Novotney and Officer Hearon again assert this claim is barred by qualified immunity.

To establish a First Amendment retaliation claim, a plaintiff must demonstrate: (1) he engaged in protected First Amendment activity; (2) the defendant took adverse action that would

chill a person of ordinary firmness from continuing in that protected activity; and (3) there was but-for causal connection between the plaintiff's injury and the defendant's retaliatory animus. *Watson v. Boyd*, 119 F.4th 539, 550 (8th Cir. 2024). However, if there is probable cause to arrest the plaintiff, his First Amendment retaliatory arrest claim fails as a matter of law. *Nieves v. Bartlett*, 587 U.S. 391, 408 (2019). The "no-probable-cause requirement" does not apply to plaintiffs presenting "objective evidence that they were arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407.

First, Plaintiff cannot establish a lack of arguable probable cause. As established in this Court's analysis of Count VIII below, the complaint from MERS-Goodwill and the surveillance footage provided Detective Novotney with at least arguable probable cause to believe Plaintiff committed the municipal infraction of trespassing. Because arguable probable cause existed to issue a citation, Plaintiff cannot establish his alleged arrest was retaliatory and his claim fails. *See Nieves*, 587 U.S. at 408.

Second, Plaintiff's claim does not fall within the exception provided by *Nieves*, 587 U.S. at 407, and clarified in *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). Under that clarification, a plaintiff may proceed on a First Amendment retaliation claim despite the presence of probable cause if he produces objective evidence that the charge arose in "circumstances where officers have probable cause to make arrest but typically exercise their discretion not to do so." *Gonzalez*, 602 U.S. at 658; *see also Ward v. City of Sherwood, Arkansas*, 173 F.4th 994, 999 (8th Cir. 2026) ("Without objective evidence that the officers engaged in an unusual exercise of discretion, the existence of arguable probable cause to arrest Ward for disorderly conduct defeats his claim alleging retaliatory arrest."). In an attempt to satisfy the *Gonzalez* standard, Plaintiff points to

evidence from his own incident including: (1) a computer-assisted dispatch (CAD) entry classifying the call as a "disturbance"; (2) an on-scene statement by a responding supervisor suggesting Plaintiff had a right to be on the premises; (3) a lieutenant's internal email questioning whether a trespass summons was legally warranted; and (4) the prosecutor's eventual entry of *nolle prosequi*. (ECF No. 85 at 7–8.)

Plaintiff's response misapprehends the requirements to qualify for the *Nieves* exception under the *Gonzalez* inquiry. (*See* ECF No. 85 at 7.) Under *Gonzalez*, even if a plaintiff cannot show the absence of probable cause for his arrest, a plaintiff can establish a First Amendment retaliation claim if the charged offense is one for which law enforcement routinely exercises discretion not to cite or arrest, through department enforcement trends or arrest data evidencing that individuals committing the same violation were ignored. 602 U.S. at 658. Here, Plaintiff has not shown a pattern of officers refraining from citing individuals for refusing to leave commercial property after receiving notice from the owner. Rather, Plaintiff's evidence reflects routine internal deliberations regarding the legal merits of Plaintiff's case. (*See* ECF No. 85 at 7–8.); *see also Ward*, 173 F.4th at 999 (finding no application of the *Nieves* exception where "Ward did not present objective evidence that officers generally have exercised their discretion to refrain from arresting persons who engaged in conduct similar to Ward's without using profanity."). On-scene impressions by responding officers, an internal command inquiry, and the subsequent entry of *nolle prosequi* do not establish trespass citations as outliers from department policy, nor do they negate the Complaint and surveillance footage showing Detective Novotney had probable cause when the citation was issued. Because Detective Novotney and Officer Hearon had probable cause to arrest or cite Plaintiff and Plaintiff has not demonstrated that the University City Police Department or its officers typically exercise discretion to enforce trespass violations in similar

circumstances, they are entitled to judgment as a matter of law on Plaintiff's retaliation claim in Count VI. *See Gonzalez*, 602 U.S. at 658; *see also Nieves*, 587 U.S. at 407.

Further, because Plaintiff has not shown a deprivation of his First Amendment rights, Detective Novotney and Officer Hearon are entitled to qualified immunity on Count VI. *See Jones*, 675 F.3d at 1161; *see also Krout*, 583 F.3d at 564. Accordingly, summary judgment is granted on Count VI.

### F. COUNT VII: ABUSE OF PROCESS UNDER § 1983 AGAINST DETECTIVE NOVOTNEY AND OFFICER HEARON.

In Count VII, Plaintiff asserts a claim for abuse of process under 42 U.S.C. § 1983, alleging that Detective Novotney and Officer Hearon utilized legal process against Plaintiff for ulterior purposes not intended by the law, causing a trespass charge to be filed against Plaintiff without probable cause. (ECF No. 1 at 22.)[4] As § 1983 is not a source of substantive rights but a method of vindicating rights that have been infringed, the first step in such claims "is to identify the constitutional right allegedly infringed." *Albright*, 510 U.S. at 271. Without an underlying constitutional violation, a § 1983 claim fails as a matter of law. *See id*. Moreover, absent a procedural defect, forwarding case materials supported by arguable probable cause does not constitute improper or perverted use of legal process. *See Gunderson*, 904 F.2d at 409–10. Even if an abuse of process claim could proceed in this Court absent a Fourth Amendment seizure, the record shows Detective Novotney transmitted the case file, store complaint, and surveillance

[4] In Count VII, Plaintiff purports to assert a claim for 'abuse of process' under 42 U.S.C. § 1983. However, § 1983 does not provide a remedy for state common-law torts but requires the deprivation of rights "secured by federal statutes or the Constitution". *See Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990); *see also Albright*, 510 U.S. at 271. Moreover, while Count VII is styled as 'abuse of process,' Plaintiff's factual allegation—that Defendants caused charges to be filed against Plaintiff without probable cause—aligns with Fourth Amendment malicious prosecution. *See Thompson v. Clark*, 596 U.S. 36, 42–44 (2022). Even construing Count VII as a Fourth Amendment malicious prosecution claim, Plaintiff's claim fails as a matter of law for the reasons discussed below in Count VIII.

footage to the prosecutor based on at least arguable probable cause that Plaintiff committed municipal trespassing. (*See* ECF No. 78 ¶ 23; ECF No. 78-6 ¶ 14.)

Likewise, because Plaintiff cannot establish the necessary constitutional deprivation, Detective Novotney and Officer Hearon are entitled to qualified immunity. *See Jones*, 675 F.3d at 1161; *see also Krout*, 583 F.3d at 564. Accordingly, summary judgment is granted in favor of Novotney and Hearon on Count VII.

## G. COUNT VIII: MALICIOUS PROSECUTION UNDER § 1983 AGAINST DETECTIVE NOVOTNEY AND OFFICER HEARON.

In Count VIII, Plaintiff brings a claim of malicious prosecution in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Detective Novotney and Officer Hearon. (ECF No. 1 at 23.) To establish a Fourth Amendment malicious prosecution claim under § 1983, the plaintiff must prove: (1) the defendant initiated charges without probable cause; (2) the motive in bringing the charges was malicious; (3) the prosecution terminated in the plaintiff's favor; and (4) the prosecution resulted in a deprivation of liberty amounting to a Fourth Amendment seizure. *Thompson*, 596 U.S. at 42–44. "The initiation of charges by itself, or a summons to appear in court on an additional charge, does not constitute a seizure that supports a claim of malicious prosecution." *Ward*, 173 F.4th at 1000.

Initially, Plaintiff's claim fails because he cannot establish a Fourth Amendment seizure. Indeed, a Fourth Amendment malicious prosecution claim requires a post-charge deprivation amounting to a seizure. *Thompson*, 596 U.S. at 43, n.2. The Eighth Circuit has held that the initiation of charges or a summons to appear in court does not constitute such a seizure. *Ward*, 173 F.4th at 1000. Here, the record shows Plaintiff was not seized because he was never arrested or taken into physical custody but was merely compelled by a citation to appear in court. (ECF No.

78 ¶¶ 24, 26; ECF No. 86 ¶ 26.) Accordingly, Count VIII fails as a matter of law because Plaintiff cannot show a constitutional right infringed.

Even if Plaintiff could establish a seizure, Count VIII fails because Plaintiff cannot show the absence of probable cause. *See Thompson*, 596 U.S. at 43. "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011). As an initial matter, the record demonstrates Chief Hampton and Officer Hearon had no direct involvement in forwarding materials regarding trespassing to the prosecutor, as Detective Novotney submitted the complaint signed by Ms. Bowman on behalf of Goodwill, occurrence report number 22-22389, to the prosecutor. (ECF No. 78 ¶¶ 21, 22.) Detective Novotney's involvement is limited to investigating the matter and forwarding all available materials and videos to the prosecutor.[5] (ECF No. 78 ¶ 23; ECF No. 78-6 ¶ 14.) The complaints from Goodwill and video recordings submitted to the prosecutor demonstrate that Detective Novotney provided at least arguable probable cause to believe Plaintiff committed municipal trespassing. Likewise, Officer Hearon had no direct involvement in Plaintiff's prosecution and cannot show she initiated charges without probable cause.

Also, Plaintiff's claim fails because Novotney and Hearon are immune from suit based upon qualified immunity. Qualified immunity shields officers if they had at least "arguable

[5] Plaintiff disputes whether Detective Novotney forwarded all available materials to the prosecutor. (ECF No. 86 ¶¶ 22–23) However, this dispute does not create a genuine issue of material fact. Even assuming an evidentiary omission occurred, Plaintiff cannot demonstrate he was subjected to a Fourth Amendment seizure, which defeats his malicious prosecution claim at a threshold.

probable cause" to initiate or pursue charges. *Borgman*, 646 F.3d at 522–23. Because Plaintiff was not subjected to a Fourth Amendment seizure and Detective Novotney had arguable probable cause, Plaintiff cannot establish a constitutional violation. Therefore, as Plaintiff cannot demonstrate the deprivation of a constitutional right by Defendants, Detective Novotney and Officer Hearon are entitled to qualified immunity, and summary judgment is granted on Count VIII.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Chief Hampton, Detective Novotney, and Officer Hearon's Motion for Summary Judgment (ECF No. 76) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 21st day of October, 2026.

**JOSEPH S. DUEKER**
**UNITED STATES MAGISTRATE JUDGE**